# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY B. AUSTIN, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 05-3361-CV-S-RED |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER

Now pending before the Court is a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence Previously Imposed on Movant with Suggestions in Support Thereof (Doc. 1). In this Motion, Jeffrey B. Austin ("Movant") seeks post-conviction relief, arguing that his sentencing counsel, Dee Wampler, was ineffective and that the Supreme Court's holdings in *Blakely* and *Booker* apply retroactively to Movant's sentence. For the reasons set forth below, the Court finds that Movant's § 2255 Motion (Doc.1) is due to be **DENIED**.

## I. Factual and Procedural Background

On February 27, 2002, a grand jury returned a one count indictment charging that on or about January 14, 2002, in Greene County, in the Western District of Missouri, Movant, a convicted felon, and then being as unlawful user of a controlled substance, did knowingly and intentionally possess firearms, including a Remington 12-gauge shotgun and two Glock 9mm pistols, together with ammunition, all in violation of 18 U.S.C. §§ 922(g)(1) and (3) and 924(a)(2). Following the indictment, an arrest warrant was issued and Movant was arrested on May 12, 2002. On May 30, 2002, Movant entered a plea of not guilty. On August 19, 2002 Movant was granted a waiver of jury trial and a bench trial commenced on August 26, 2002. At trial, Movant was found guilty and

a presentence investigation was ordered. Movant remained on bond pending sentencing. Following trial, Movant's counsel S. Dean Price withdrew with Movant's consent and was replaced by Dee Wampler, Joseph Passanise and Thomas Carver, each of whom had earlier entered an appearance on behalf of Movant.

On November 7, 2002, Movant was arrested following a positive drug test, a violation of the conditions of his release. On November 15, 2002, the Honorable James C. England, United States Magistrate Judge, held a bond revocation hearing. Mr. Wampler appeared at the hearing and argued for Movant's continued release on bond, subject to certain conditions. The magistrate took the matter under advisement, and in an order dated November 19, 2002 revoked Movant's bond and ordered that Movant be taken into custody.

On March 26, 2003, Movant filed an Ex Parte Motion to Dismiss Private Counsel and Appoint Public Defender with Supporting Suggestions. Pursuant to said motion, Magistrate England held a ex parte hearing on April 2, 2003 to reconcile conflicts between Movant and Movant's counsel, Dee Wampler. At the hearing, Mr. Wampler noted that his client had refused a reduction in his applicable sentencing calculation for acceptance of responsibility and that Mr. Wampler had negotiated a plea agreement which he believed to be in Movant's best interest. Movant stated at the hearing that he had lost confidence in Mr. Wampler because Movant had not been contacted about the presentence investigation report and because Movant received two letters from counsel which he perceived to be contradictory. Finding that the basis for Movant's request did not rise to the level of a irreconcilable conflict, the magistrate denied Movant's motion and ordered Movant to continue to meet with Mr. Wampler and work out any conflicts.

At a separate hearing on April 4, 2003, Magistrate England, pursuant to a Motion by

Movant's Counsel, ordered that Movant undergo a psychological/psychiatric evaluation pursuant to 18 U.S.C. §§ 3552 and 4241 prior to sentencing. The magistrate further ordered that the Federal Bureau of Prisons prepare the report and include in the report the examiner's findings as to whether Movant was suffering from a mental disease or defect and/or whether Movant was suffering from a significantly reduced mental capacity impairing both his ability to understand the nature and consequences of his behavior or the proceedings against him and his ability to participate in his own defense.

Finally, on September 15, 2003, Movant, still represented by counsel Dee Wampler, appeared for sentencing before the Court. At this hearing, the Court considered several objections to the presentence investigation report ("PSR") filed by Movant's counsel.

The first objection was to page 10, paragraph 49 of the PSR referencing a misdemeanor offense in Arkansas. This objection was agreed to by the parties to have no impact on the sentencing guidelines.

The Court next considered Movant's objection to pages 5-8, paragraphs 19, 20, 21, 22, 23, 28, 29, 30 and 33 of the PSR on grounds that the methamphetamine being used to charge Movant in Case No. 302CF9560 in the Circuit Court of Greene County Missouri was also being used to punish Movant in the federal case in violation of the double jeopardy clause of the Fifth Amendment. Movant also objected to the final calculation of the amount of methamphetamine in paragraph 33 of the PSR. In response, the Government stated that it was prepared to put on evidence to prove the quantity of drugs.

Movant's third objection to page 11, paragraph 52 of the PSR was that his Criminal History Category of II was overstated based on an Arkansas conviction that occurred almost 15 years prior

to the federal offense. The Court denied the objection that Movant's criminal history was overstated.

Movant's fourth objection to page 11, paragraph 51 of the PSR was agreed to by the parties to have no impact on the sentencing guidelines.

Movant's fifth objection to page 9, paragraph 38 of the PSR was that his base offense level under the federal sentencing guidelines should have been 20 rather than 28 because the United States Probation Office had improperly applied U.S.S.G. § 2D1.1 instead of § 2K2.1. Movant further noted that the actions relied upon by probation for application of § 2D1.1 was an uncharged federal offense of distribution of a converted total quantity of marijuana of 562.25 kilograms. Probation argued in response that Movant possessed firearms in connection with distribution of a controlled substance (2 Counts), and trafficking (1 Count) as filed in the Circuit Court of Greene County Missouri Case No. 302CF9560. In support of this position, the probation office noted that the three firearms seized from Movant were in close proximity to drug paraphernalia and $8,000 in alleged drug proceeds; that a witnesses in the state case had seen Movant possess the firearms; and that a confidential informant from the state case had seen guns at Austin's residence while drugs were present. Probation argued that these factors established that Movant possessed the firearms in relation to the charged state offense. Thus, probation applied § 2K2.1(c)(1) and § 2K2.1(c)(1)(A) of the sentencing guidelines which further directed the application of § 2X1.1. *See* U.S.S.G. § 2K2.1(c)(1)(A) ("if the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commissions of another offense . . . apply 2X1.1 in respect to that other offense . . . "). Section 2X1.1(a) then directs the Court to the substantive offense, in this case distribution of controlled substances, the sentencing of which is controlled by § 2D1.1. Under §

2D1.1, Movant's base offense level was then determined to be 28, based on a total converted quantity of at least 400 but less than 700 kilograms of marijuana. However, in closing probation noted that these were properly issues for judicial determination. At the hearing, the Government agreed with the probation office that the application of § 2D1.1 was appropriate, but recommended that Movant's federal sentence be run concurrent with any state sentence to avoid potential double jeopardy issues.

Lastly, Movant objected to page 9, paragraph 39 of the PSR to a two level enhancement under § 2D1.1(b)(1) for possession of a dangerous weapon in connection with the charged drug trafficking offense for a total offense level of 30. The Government noted that the Court would have to make this determination and the Government was again prepared to put on evidence connecting Movant's possession of the guns to the drugs.

Following the objections, the Court next heard arguments from Mr. Wampler that Movant should be given a downward departure on grounds that Movant suffered from a diminished mental capacity. The Court denied this request based on the findings and conclusions in the court ordered psychological/psychiatric examination report that Movant was able to understand the nature and consequences of his behavior and the proceedings against him and participate in his defense.

Immediately after this ruling, the Court granted a brief recess. During this recess, Mr. Wampler conferred with Movant, and then with the Assistant United States Attorney in the presence of Movant. Following the recess, Mr. Wampler stated that Movant was no longer going to contest the quantity of drugs and the connection between the firearms and the drugs in exchange for the government recommending the low end of the sentencing guideline calculations. However, Movant's counsel did state that he did want to preserve his client's right to appeal the application

-5-

Case 6:05-cv-03361-RED   Document 10   Filed 07/06/06   Page 5 of 18

of § 2D1.1 instead of § 2K2.1. At this point Movant's counsel proffered to the Court several papers prepared by Movant.

The first paper referred to the prior Arkansas misdemeanor conviction previously objected to by Movant and determined to have no impact on the sentencing guidelines. The Court then noted that the second group of papers was an objection to sentencing on grounds that Movant's right to effective assistance of counsel had been violated. However, the Court declined to read the letters in the second set of papers, noting that they appeared to be subject to the attorney-client privilege. The Court then stated that the issue of ineffective assistance of counsel was not relevant to Movant's sentencing and that Movant could take the issue up on appeal:

> THE COURT: All right. Whatever – that is what it is. It's not an issue we're deciding here today. Today is just sentencing based on the conviction you had at trial.
>
> Now, the issue of ineffective assistance of counsel can certainly be raised on appeal. You will have rights to appeal. I'll explain those to you in just a little bit.
>
> But in regard to sentencing, there's one issue that remains here today for us to decide that could relate to the level of punishment that the guidelines provide, and that is whether or not this state court drug charge can be considered in calculating the applicable sentencing guideline here. I haven't made a decision on that yet. That issue is still on the table. It's what remains after you agreed to waive a couple of issues that were first there and that dealt with the quantity of the drugs and whether or not they related to the firearm. But apparently you've reached an agreement here that in return the government is going to recommend the lower end of the guidelines.
>
> DEFENDANT AUSTIN: Yes, Sir.

(Sentencing Transcript at 17-18.) However, upon insistence of Movant and waiver of his attorney-client privilege, the Court reviewed the letters from the second group of papers. The first letter reviewed by the Court was a February 14, 2003 letter from Mr. Wampler to the United States Probation Office setting forth Movant's fifth objection to the PSR discussed more fully above. The second letter was a March 12, 2003 letter from Mr. Wampler to Movant. In this letter, counsel

-6-

stated to Movant that the government was willing to recommend a two-point reduction in the sentencing offense level for acceptance of responsibility which could potentially save Movant two years off of his sentence. The letter further discussed the option of Movant pleading guilty in state court and having the state sentence run concurrent with the federal sentence. The third letter dated March 13, 2003 from counsel to Movant discussed possible dismissal of several state charges and having the state sentence run concurrent with the federal sentence. The letter also stated that Movant was looking at a federal sentence of 108 to 120 months, but that counsel could attempt to get this charge reduced to a range of 87 to 108 months. Finally, the fourth letter dated August 5, 2003 from counsel to Movant discussed the results of the psychiatric/psychological evaluation report conducted by the Federal Bureau of Prisons, and its recommendation against a downward departure for diminished mental capacity. Counsel too expressed doubt as to the success of a downward departure, and further advised his client to plead guilty in state court to get concurrent time.

After reviewing all the letters, the Court stated:

> Well, I have read all the letters, Mr. Austin. Looks to me like your counsel was doing everything he could to get you to understand what offers were being made by the U.S. Attorney. There's nothing in there that I see that worked against your interest. In fact, some of it looks like it could have worked in support of your interest to a significant degree. But in any event I've read those and there's nothing about that would affect my sentencing here.

(Sentencing Transcript at 19). Movant's complete documents were then entered into the record. The Court then made a finding that it would consider the pending state drug charges in relation to the charged federal offense and that the application of § 2D1.1 was appropriate. The Court further ruled that the federal sentence would run concurrent with whatever state sentence Movant received. Based on these determinations Movant's total offense level was 30 with a criminal history category

-7-

of II, with a guideline range of custody between 108 to 120 months.[1]

Prior to determining Movant's sentence, the Court heard an argument from Movant's counsel, Movant's allocution, and the government's argument. Movant's counsel argued not only for a sentence range at the low end of the guidelines (108 months), but again argued for a downward departure from the 108 months based on Movant's alleged diminished mental capacity. Movant proffered no allocution other than the documents he previously submitted to the Court. Pursuant to the in-court agreement, the government recommend a sentence at the low end of the guidelines.

Following these arguments, the Court–after specifically noting that it would not normally impose a sentence at the low end of the guidelines following a trial–sentenced Movant at the low end of the guidelines to 108 months pursuant to the in-court agreement of the parties, but refused to reduce Movant's sentence any further for any alleged mental defect.

On appeal, Movant was represented by a third attorney, William Bunch. Movant argued that the evidence was insufficient to support his conviction as a felon in possession of firearms because he no longer lived at the residence where the firearms were seized. Notably, Movant did not challenge the application of § 2D1.1. The Eighth Circuit Court of Appeals, in an unpublished opinion, rejected Movant's argument. *See United States of America v. Jeffery B. Austin,* No. 03-3405 (8th Cir. May 12, 2004). In affirming the decision of the district court, the Eighth Circuit found that there was sufficient evidence that Movant possessed the firearms, either actively or constructively, on the date of the seizure. *See id.* (citing *United States v. Gary*, 341 F.3d 829, 834 (8th Cir. 2003)).

On August 10, 2005, Movant, represented by a new set of attorneys, filed the Motion under

---

[1] If not for a statutory maximum penalty, Movant's guideline range would have been 108 to 135 months.

28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence Previously Imposed on Movant (Doc. 1) currently pending before the Court. The Government's Response (Doc. 4-1) was filed on September 22, 2005 and Movant filed a Traverse[2] (Doc. 6) on October 14, 2005.

## II. Standard of Review

Section 2255 of Title 28 allows a prisoner in federal custody to attack a sentence imposed by a federal court, on grounds that the court lacked jurisdiction to impose the sentence, that the sentence was not authorized by law or was otherwise open to collateral attack, or that the prisoner's constitutional rights have been denied or infringed upon to render the judgment vulnerable to collateral attack. 18 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424, 426-27, 82 S. Ct. 448, 470, 7 L. Ed. 2d 417 (1962). Relief under § 2255 is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal, and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). "A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error." *Id.* Ineffective assistance of counsel, if proved, satisfies this standard. *Id.*

## III. Analysis

In his § 2255 Motion, Movant alleges two errors that he claims entitle him to relief. First, Movant argues that his sentencing counsel, Dee Wampler, was ineffective, in violation of Movant's Fifth Amendment right to Due Process and his Sixth Amendment right to effective assistance of

---

[2] Previously Movant had sought leave of Court to file a traverse. *See* Motion for Leave to File Traverse on or Before October 17, 2005 with Suggestions in Support Thereof (Doc. 6). So that the Court may consider Movant's traverse in this Order, the Motion is **GRANTED.**

counsel. Second, Movant argues that the Supreme Court's decisions in *Blakely* and *Booker* apply retroactively to Movant's sentence.

### *A. Ineffective Assistance of Counsel*

Movant argues that he is entitled to relief because his sentencing counsel, Dee Wampler, failed to produce evidence or argue at sentencing that Movant was not in actual or constructive possession of a dangerous weapon in connection with the charged drug offense. As a result of this error, Movant alleges that his sentence was enhanced from a base offense level of 16 for being a felon in possession of a firearm, with a recommended guideline sentencing range of 24 to 30 months, to a total offense category of 30 for being a drug offender who possessed a gun in connection with the drug offense, with a guideline range of 108 to 120 months, with Movant ultimately receiving a sentence of 108 months.

Movant states that the government must establish by a preponderance of the evidence that the defendant possessed a weapon and that there was a nexus between the weapon and the drug offense before the burden shifts to the defendant to prove that it was clearly improbable that the weapon was connected with the drug offense. It is Movant's contention that the government did not meet this burden, that the Court did not make a specific finding that the weapons Movant was guilty of possessing were used in connection with another offense and that Movant continued to object to this enhancement prior to and throughout sentencing. Movant further argues that Mr. Wampler was ineffective in that after objecting to the quantity of the drugs and the connection of weapons to the drugs prior to sentencing, at sentencing, and after introducing evidence of the client's mental illness, Mr. Wampler suddenly waived the critical issue of connecting the guns to the drugs in formulating the in-court agreement with the government to seek a sentence at the low end of the guidelines.

Movant further argues that the record is clear that Movant did not knowingly and voluntarily agree with this waiver, as evidenced by raising the issue of ineffective assistance of counsel in the documents he submitted to the Court. Finally, Movant proffers that Mr. Wampler's performance was objectively unreasonable and prejudicial under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

In response, the Government argued that Mr. Wampler's representation had not been ineffective within the meaning of *Strickland*. In support of this position, the Government submitted the affidavit of Movant's sentencing counsel, Dee Wampler. In this affidavit, Mr. Wampler stated that during the sentencing recess, the Government first stated that it would recommend a sentence at the low end of the guideline range in return for Movant withdrawing his objection to the drug quantity and firearms in connection to the drugs. Mr. Wampler further stated that although the government initially wanted Movant to agree to the application of § 2D1.1 in lieu of §2K2.1, counsel objected as Movant wanted to preserve that issue for sentencing and for appeal and the government agreed to that request. At this point, Mr. Wampler states that he met with Movant and discussed that counsel could proceed with the objections or accept the government's offer. Mr. Wampler also discussed with Movant the evidence the government was prepared to present in support of enhancement and the arguments counsel would make to counter that evidence. According to Mr. Wampler, Movant stated that he understood the evidence and his options and that he wanted to accept the government's offer in order to have the best chance or receiving a lesser sentence in this matter. Mr. Wampler states that this decision was made freely and voluntarily by Movant and that it was his choice and decision. Mr. Wampler further affirmed that he concurred in Movant's decision because

-11-

> I felt that the Government could establish both the drug amounts and firearm usage. I also believed that it was in Mr. Austin's best interest to accept the Government's offer since I believed that Mr. Austin would likely receive a lesser sentence under the agreement and still maintain his right to challenge the use of Section 2D1.1. It was the best strategy decision (at the time) in my opinion.

(*See* Wampler Affidavit (Doc. 4-2) at 10). In response to the Government's position and the affidavit of Mr. Wampler, Movant filed a traverse. Therein, Movant again argued that Mr. Wampler should have required the government to prove its burden with respect to the connection of firearms to the drug offense. In response to Mr. Wampler's assertion that the sentencing waiver was a strategic decision, Movant proffers that counsel was still ineffective because Mr. Wampler did not subject the government's position to meaningful adversarial testing. *See United States v. Cronic*, 466 U.S. 648 (1984). Furthermore, Movant again argues that he did not knowingly and voluntarily consent to the waiver. Movant notes that neither defense counsel nor the Court conducted an inquiry following the waiver to determine if Movant knew the legal impact of his actions, and with full knowledge of all the choices available to him, truly wanted that result. Finally, Movant submits that several of the factual claims attested to by Mr. Wampler in his affidavit are in dispute, thus warranting an evidentiary hearing by the Court. These include Mr. Wampler's statement that "I had never observed Mr. Austin suffering from any mental illness or impairment during the course of my representation of him," which Movant argues conflicts with a previous statements of Mr. Wampler indicating that he believed Movant was suffering from a mental affliction; Mr. Wampler's statement that he discussed the waiver with Mr. Austin's mother and minister, to which Movant has supplied counter-affidavits asserting that said discussion(s) never took place; and Mr. Wampler's statement that Movant did not indicate to counsel that he did he not wish to proceed with the in-court agreement, which Movant argues is directly contradicted by Movant's immediate motion to

discharge counsel by presenting a set of papers to the Court.

To prevail on an ineffective assistance of counsel claim, a convicted defendant must first show counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688 (1984). This entails a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id.* The defendant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Accord Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (admonishing that the prejudice prong encompasses more than mere outcome determination; rather the focus of the question is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair'). Ordinarily, if the defendant cannot prove prejudice, it is not necessary to address whether counsel's performance was deficient. *See United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

Upon consideration, the Court finds that Movant has failed to satisfy either prong of the *Strickland* test and that his claim for ineffective assistance of counsel must fail. With respect to the prejudice prong, Movant has not made the threshold showing that the result of his sentencing would have been different.

Here, Movant's main point of contention is that Mr. Wampler's abandonment of Movant's objection to the connection of the firearms to the drug offense was prejudicial in that it did not force the government to carry its burden of proof establishing the connection between the drugs and the guns. Movant agues that had Mr. Wampler successfully contested the connection between the firearms and the drug offense, his sentence could have been reduced by up to seven years; however,

-13-

the agreement entered into by counsel to seek a sentence at the low end saved him only twelve months, from 120 months to 108 months.

Based on the record, there is nothing that leads the Court to believe that had Mr. Wampler proceeded to challenge the connection of the firearms to the drugs, that he would have succeeded resulting in a lesser sentence for Movant. For one, at the time of sentencing, the government was prepared with witnesses and other evidence to carry its burden connecting the firearms to the drugs. Mr. Wampler and Movant were provided with copies of the government's investigative reports which detailed the evidence the Government was prepared to present. As Mr. Wampler stated in his affidavit, he believed that the Government could establish both the drug quantity and use of firearms necessary for the application of § 2D1.1 and that he and Movant both agreed that the Government's offer of 108 months was a good result as it would likely avoid the imposition of a harsher sentence by the Court in the event the Court found that the government had carried its burden. Following the in-court agreement, the Court determined that it would consider the drugs involved in the state transaction in connection with the federal offense; that whatever sentence Movant received from federal Court would run concurrent with whatever state sentence Movant received; and that the application of § 2D1.1 was appropriate.

Moreover, there is no reason to believe that had Movant not agreed to the in-court agreement and waived several objections in exchange for a sentence at the low end of the guidelines that the Court would not have sentenced Movant at the higher end of the guideline range. Indeed, the Court indicated that it "wouldn't normally go to the low end of the guidelines after a trial" but in light of

-14-

the deal made in Court it would enter a sentence at the low end of guidelines.[3]

Nevertheless, even assuming *arguendo* that Movant did satisfy the first *Strickland* element, it is clear that Mr. Wampler's performance was not inadequate. In determining whether counsel's performance was ineffective, the inquiry must be whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of competent assistance. *Strickland*, 466 U.S. at 690. Moreover, scrutiny of counsel's performance must be highly deferential, because there is a temptation to second-guess counsel's assistance after conviction, and because it is easy to conclude that a particular act or omission was unreasonable in hindsight. *Id.* at 689; *Fretwell v. Norris*, 133 F.3d 621, 627 (8th Cir. 1998).

Here, the record clearly indicates that Mr. Wampler acted as effective advocate at all times throughout his representation of Movant. Prior to sentencing, Mr. Wampler requested that Movant undergo a psychological/psychiatric evaluation, in anticipation of seeking a downward departure for diminished mental capacity. This motion was granted by the magistrate. Mr. Wampler also argued on Movant's behalf to remain on bond despite a positive drug test prior to sentencing. This request was denied. Also prior to sentencing, Mr. Wampler filed six objections to the presentence investigation report, including challenges to the use of § 2D1.1, the quantity of drugs, and a further two level enhancement pursuant to § 2D1.1(b)(1). Mr. Wampler also sent several letters to Movant during this time urging Movant to take the government's offer for a reduction in his offense level for acceptance of responsibility. Had this offer been accepted by Movant, Movant could have

---

[3] The Court also finds it notable that Movant's bond had been revoked for a positive drug test prior to sentencing which, too, could have resulted in a larger sentence for Movant. However, because of the in-court agreement, the Court did not increase the sentence above the low end of the guidelines.

received a reduced sentencing range.

At sentencing, Mr. Wampler once again renewed Movant's objections to the PSR. In addition, Mr. Wampler twice argued for a downward departure based on Movant's alleged mental condition, even after the Court indicated that it would not grant such a departure. Finally, only after conferring with and receiving consent from Movant did Mr. Wampler abandon his objections to the drug quantity and the connection of firearms to the charged state drug offense. Even then, such agreement was made with the understanding that Movant would be sentenced at the low end of the applicable guideline range, and that Movant would preserve his right to challenge the use of § 2D1.1 instead of § 2K2.1 on appeal. Had Movant not agreed to the in-court agreement, Mr. Wampler states that he was prepared to challenge the government on several objections, if his client so desired.

While Movant acknowledges that courts grant substantial deference to counsel's choice of trial strategy, he states that such strategy "is not absolute, particularly when there is no meaningful adversarial testing of the Government's position on a crucial issue." *United States v. Cronic*, 466 U.S. 648 (1984). However, the Court finds Movant's reliance on *Cronic* to be misplaced. A *Cronic* violation only occurs when counsel has failed to function in any meaningful sense as the Government's adversary. *See id.* at 666. Moreover, the *Cronic* Court noted that challenges based on particular errors or omissions–such as Mr. Wampler's alleged failure to challenge the nexus between the guns and the drug offense–are best evaluated under *Strickland*. *See id.* at 666 n. 41; *see also Gerlaugh v. Stewart*, 129 F.3d 1027, 1036 (9th Cir. 1997) ("Under the *Cronic* test, it is the *totality* of [defense counsel's] efforts that we must examine, not just part of them in isolation.")(emphasis in original).

Additionally, Movant claims that his waiver was not voluntary and that the Court should

-16-

Case 6:05-cv-03361-RED   Document 10   Filed 07/06/06   Page 16 of 18

have conducted a further inquiry into the voluntariness of Movant's waiver. In support of this position, Movant now states that the documents he provided to the Court at his sentencing should have put the Court on notice that his waiver was equivocal. However, the record is clear that the Court inquired into Movant's understanding of his waiver. The Court noted that the documents addressed Movant's concern about the effectiveness of both his trial and sentencing counsel, and advised Movant that he could raise the issue of ineffective assistance of counsel on appeal. The Court then stated that the sole issue for consideration was that Movant had agreed to waive his challenges to the quantity of the drugs and whether or not they related to a firearms, and that in exchange for this waiver, the government would recommend the low end of the guidelines. Movant replied in the affirmative that he understood the waiver. Accordingly, the Court determined that Movant's waiver was voluntary.

Finally, the Court does not find that the alleged factual disputes in Mr. Wampler's affidavit warrant an evidentiary hearing. With respect to Movant's assertion that he did not agree to the in-court agreement contrary to Mr. Wampler's statement that "At no time did Mr. Austin indicate to me that he did not wish to proceed with the agreement," the Court has already found that Movant affirmed that he understood and wished to proceed with the agreement. As for the other statements allegedly in dispute, the Court does not find the disputed statements impact the Court's determination that Mr. Wampler's representation of Movant was effective.

### B. Booker and Blakely Challenges

Movant also argues that he is entitled to relief under the Supreme Court's decisions in *United States v. Blakely,* 124 S.Ct. 2531 (2004) and *United States v. Booker*, 125 S.Ct. 738, 745 (2005). Movant argues that since he was sentenced under a mandatory application of the sentencing

-17-

guidelines, and these decisions have effectively rendered the federal sentencing guidelines advisory, the Court should order Movant resentenced under an advisory scheme.

Movant acknowledges, as does the government, that the Eighth Circuit Court of Appeals has held that *Booker* "does not apply to criminal convictions that became final before the rule was announced, and thus does not benefit movants in collateral proceedings." *Never Misses a Shot v. United States*, 413 F.3d 781, 783 (2005). Despite Movant's arguments to the contrary, the Court is bound by the Eighth Circuit's decision in *Never Misses a Shot.* Accordingly, because Movant's conviction became final before the Supreme Court's decision in *Booker*, and because the Eighth Circuit has held that *Booker* does not retroactively apply to such convictions, Movant is not entitled to relief on this point.

## IV. Conclusion

Upon review of Movant's 28 U.S.C. § 2255 Motion (Doc. 1), the Government's Response (Doc. 4), Movant's Traverse (Doc. 7) and the record and proceedings in the underlying criminal case, the Court finds that none of Movant's arguments warrant relief under § 2255. Additionally, the Court finds that all the issues can be conclusively resolved by the record and that a hearing is not warranted. *See Bradshaw v. United States*, 153 F.3d 704, 708 (8th Cir. 1998). Accordingly, it is hereby:

ORDERED that Movant's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 1) is **DENIED.**

**IT IS SO ORDERED**.

DATE:    July 5, 2006              */s/ Richard E. Dorr*
                                    RICHARD E. DORR, JUDGE
                                    UNITED STATES DISTRICT COURT